May it please the court, good afternoon. My name is Ned Smock. I represent defendant-appellant Matthew McCall. I'd like to reserve two minutes for rebuttal and I'll do my best to keep track of the time. Let me ask you something about the handcuffing. It looks to me as though suppose they had never handcuffed McCall and suppose he cooperated anyway. They would have found the gun in a frisk. That's true. Yes. But our position is that the handcuffing occurred prior to the pat-down itself. We don't have a finding of fact by the judge on whether it was before or after. Well, we do know that the judge considered the testimony on that fact and that there was actually a fair amount of testimony about it going both directions. Am I right that he didn't make a finding? He made a finding that assuming that the handcuffing occurred prior to the pat-down, it still didn't make a difference. That's not a finding. That's a legal judgment. Well, that's true, but he did make clear his... Let me focus on this, what my inquiry is. My thinking is if it's an arrest, you need probable cause. If it's a stop and frisk, all you need is reasonable suspicion. That's correct. I don't have any trouble with reasonable suspicion here. Probable cause is a more interesting issue in this case. But I'm wondering if we need to decide whether there's probable cause since even the merest stop and frisk would have found the gun. Well, I think it's important for this Court to figure out whether there's a justification for every step that this officer took. Our position is that just for the pat-down, obviously there's a need for a founded suspicion based on articulable facts that Mr. McCall was armed and dangerous. Our position about that is that there certainly was not such a... For a Terry stop, you do not need a well-founded belief that the suspect is armed and dangerous. Just a reasonable suspicion and reason for the police to protect themselves that way. Well, Your Honor is correct that to make the stop itself, you don't need the founded suspicion. Now, he had received a tip of suspicious activity. He smelled marijuana. And he said he saw McCall turning around in the vehicle. Was that not enough? That's not enough, Your Honor. I think... Tell me why. You have to parse out each of the reasons. Certainly this Court needs to look under a totality of the circumstances test. But if you look at each of the bases offered by this officer, they are not enough, even when taken under a totality of the circumstances test. I think one thing that's informative, should be informative to this Court about what this officer was aware of and what he reasonably believed at the time, is to take a look at exactly what this officer did at the time of the stop and in the minutes after the stop. What this officer did was he made the stop. And you'll recall that the District Court relied very heavily on this so-called furtive movement that Mr. McCall is said to have made. What Officer Solomon did upon making the stop is went to the side of the vehicle that Mr. McCall was on, the passenger side of the vehicle. He then started to have a conversation, presumably past Mr. McCall, with the driver, Mr. Torres. So he's engaged in a conversation. Mr. McCall is in the middle of this conversation. And we don't hear any testimony from Officer Solomon that Mr. McCall has engaged in any suspicious behavior, furtive movements, nervousness, anything that you typically see in cases from this Court that would justify a pat-down search. He then asks Mr. Torres to step out of the vehicle. He has Mr. Torres step to the back of the vehicle and engages in a conversation with Mr. Torres. During this time, it's very important for this Court to understand that Mr. McCall, the passenger, the person who has allegedly made this frightening furtive movement, is left alone in the passenger seat. The officer is directing all of his attention at Mr. Torres. And Mr. McCall, the person who purportedly is the one that they're especially concerned about because of the furtive movement, is left alone in the vehicle. Again, there's no testimony about anything during this time of Mr. McCall appearing nervous, doing anything like getting out of the vehicle, or reaching for anything. At what point was the officer told that the occupants, by those occupants, that the occupants had been smoking marijuana? It's during the conversation that this officer has with Mr. Torres outside of the vehicle. Mr. Torres tells him essentially two things. We've been smoking marijuana. That's what he said, right? That's correct. Not I, not me, we, right? Right, although he doesn't specify who in particular of the occupants. And doesn't he then also tell the officer that there's marijuana in the car? He does. He says there's a roach and a small amount of marijuana in the vehicle. At that point, did the officer have probable cause to arrest the occupants of the vehicle? No, he did not, Your Honor. He may have had probable cause to cite Mr. Torres, but what he needed to do at that point to go beyond that with respect to any of the other occupants of the vehicle was to inquire further. He could have asked Mr. Torres whether who in the vehicle was actually smoking marijuana or who had dominion and control over the marijuana. Why does he have to do this? If he's got probable cause, he can arrest, and then if it turns out that somebody's just innocent, he can let them go. Well, my point is that he does not have probable cause with anyone other than Mr. Torres. Mr. Torres has said they, he has said we are, someone in the vehicle has been smoking marijuana. He includes himself in that statement. That would amount to probable cause to cite Mr. Torres for the violation of the California statute for possession of less than an ounce of marijuana. It doesn't, he doesn't have enough information with respect to the other occupants in the vehicle to make an arrest. So our position is that at that point, what he should have done was inquire further. If he intended to try to get probable cause with respect to other occupants. Hold on, let me back up for just a minute. I want to back up to the handcuffing, because if all it is is a stop and frisk, he doesn't need probable cause for an arrest. And what I'm interested in for my next handcuffing question is, it looked to me as though even though there was cross-examination about it, defense counsel's motion to suppress the evidence of the gun did not raise handcuffing as an issue that turned the case from a reasonable suspicion to a probable cause case. That is correct. That issue wasn't raised specifically with the court below. That probably explains why the district judge did not make a finding about whether the handcuffing was before or after. Well, but our position is that the judge assumed, as I said, for the sake of argument that the handcuffing occurred. And our position is that that was actually an error by this judge, that this court can review on a de novo basis. Well, we're reviewing the whole issue de novo, aren't we? Correct. So it really doesn't matter whether the district judge was right to make his assumption. All that matters is what findings there were and what evidence there is in the record. That's true. And our position is that the policeman said, he didn't put it in quite these words, but basically I read his testimony to be saying I was scared, because they didn't stop right away. They pulled into an area where there weren't any street lights. It's 2 in the morning. And I thought this might be the car burglars, and those guys carry sharpened screwdrivers that will go right through my Kevlar vest. So he frisks them. And our position is that, number one, each of those justifications, when examined carefully, doesn't stand up to scrutiny. Why? For example, with respect to the car burglary, the only information this officer had about car burglaries was a statement from a student who essentially said, this car has been driving slowly through the parking lot. Plus, they knew that there had been some car burglaries in that lot. That's correct. But that statement alone is certainly not sufficient to raise a reasonable suspicion. It may have been enough for this officer to watch the vehicle to see whether there was anything further that would have raised suspicion further. But there was absolutely nothing in that statement alone that would. Marijuana, he's got reasonable suspicion. We can see that, that he can stop the car based on the marijuana. What he needs then is some reason that justifies frisking the people that he wants to have a chat with for his own protection. Well, he needs, this court has held that this person needs an actual articulable basis to be concerned about his safety, and his safety at the hands of Mr. McCall himself. And that's where I think he's lacking. I've addressed the car burglaries with respect to the marijuana. There's nothing in the record below that establishes a clear connection between marijuana smoking or smoking a small amount of marijuana and possession of weapons. This officer conceded that sometimes people who have small amounts of marijuana have weapons, sometimes they don't. So that isn't a justification to perform the search. With respect to where they were, I think the most important thing. You mean the frisk? I'm sorry? You mean the frisk? Yes. So in addition, this court needs to be aware that there were actually three officers on the difference between a frisk and a search. As I understood it, the gun, he could just feel when he. Right. This was a pat-down search. This was a pat-down. There were two other police cars that arrived, right? That's correct. So there were three police cars right there. Correct. Let me, help me out here. The case decided by the government, none of them deals with a passenger. Do you have any cases dealing with a similar kind of incident that deals with the arrest and the frisking down of the passenger? No, although I'm not sure that that distinction matters a great deal in this case. I think the real question, again, is what basis, what actual facts can this officer draw upon to determine that that person, whether he's the driver or the passenger, actually poses a danger to him? And that's where I think he's lacking. Are there cases that say when you have a small, admit to having smoked marijuana, admit to having marijuana in the car, that the officers can assume that he may be armed and dangerous, and therefore the frisk is permissible? I'm not aware of a case, and the government hasn't cited me. Thank you. Thank you. Thank you. Good afternoon. My name is Steve Laplam. I'm an assistant United States attorney in the Eastern District, and I handle the case below. I think there's a substantial amount of agreement between the defense and the prosecution on some of the underlying facts here. For instance, we agree that there was reasonable suspicion to execute the initial car stop. There was reasonable suspicion to continue that car stop for a reasonable length of time once the driver, Mr. Torres, admitted to the use of the marijuana by all the passengers. That was an obvious fact in any event, because the officer could clearly smell the marijuana emanating from the inside of the car. The issue before us is really whether the officer had a reasonable suspicion to conduct a pat-down of the passenger. And that's what I wanted to ask you about, because I can't find any cases that were cited in your brief where it's reasonable for an officer, when he smells marijuana, to assume that people using it are armed and dangerous. Do you have any cases? No, Your Honor, but we can come close. I don't think we should use the word assume.  They're smoking marijuana, but he can certainly form a reasonable suspicion. Cases were about a much more valuable inventory, cocaines and drugs like that. Well, yes, but some of those cases started off with the smell of burning marijuana emanating from the car, and that is how I want to. But there were additional facts that caused the officers to have cause to frisk. Absolutely correct. And that was not true in this case, is that correct? Well, it wasn't, it wasn't, and let me address it this way. We have to look at the officer's conduct at the time and not from hindsight. At the moment that the officer learned that the people in the car had been smoking marijuana, he knew that a crime had been committed, namely transportation, not merely smoking, but transportation of marijuana, which is a crime under California law. And all four of those occupants knew it, obviously, because even if they hadn't been smoking, they knew marijuana was being smoked in the car. The officer in that situation is not required to assume that that's all there is, just one marijuana cigarette being smoked. And the government pointed to several cases where, surprise, surprise, a group of people in a car said, we just have a small amount of marijuana, and it turned out there were 280 pounds in the trunk. Let me ask you this. Could he have frisked the two young ladies who were in the back seat? If he had a reasonable suspicion that they were armed and dangerous, yes, he could have. And what gave him reason to believe that Mr. McCall, because he turned his head when the police stopped the car? Yes, in part. If the young ladies had turned their heads in surprise to see a police car, they could also have been patted down and frisked? If the officer believed that they had engaged in some type of furtive movement, because obviously the risk of that was... Why did they leave him alone in the car when they were interrogating Mr. Torres? Well, I don't think it's accurate to say they left him alone in the car. This is a value or a judgment call that an officer has to make when he's got multiple suspects. Well, there are two other police cars there. Well, it's not clear exactly when those two other police cars showed up in relation to when all this was going on. I don't think it's fair to say that at the time that the passenger was frisked that there were three police cars there or actually backing up to answer your question, at the time that the driver was being questioned and Mr. McCall was presumably being left alone, I don't think the record is clear as to whether those other two cars had arrived on the scene at that point. But there's no record that they... You cannot say that they definitely were not there. There's just nothing in the record. Is that what you're saying? I think the record is unclear. It was not a point that anybody thought needed clarification below. Thank you. But what the officer did articulate was, as Judge Kleinfeld indicated, that he feared that a burglar tool might be possessed, and that goes back to the furtive movement. Someone who may be under suspicion for burglary might be trying to either secrete such a tool or grab a weapon. The officer doesn't know. And the Supreme Court doesn't require the officer to speculate too far when his safety is in concern. I had the impression that he wasn't so much expecting a gun, he was fearing a screwdriver. Yes. Is that right? I think that's correct because the officer was aware that that parking lot had been the subject of car burglaries in the past, and he was very aware of the type of tool that was used in a car burglary, namely a sharpened screwdriver. And he was aware, and he testified to this effect, that such a tool can penetrate a Kevlar vest. The officer pulls the vehicle over, approaches the vehicle on which side? On the passenger side. And the window rolled down, and the officer talks to who? The driver. Well, it appears that he's talking primarily to the driver. Torres. Yes. And then he invites Torres out of the car? Yes. Asks him, and Torres cooperates, and he meets him in back of the car? Yes. Other than the description of the marijuana smoking and the presence of marijuana in the car, in the vehicle, did Torres say anything else to the officer that would have raised his suspicion that McCall might be armed? No. I don't believe Torres said anything with respect to McCall. At what point did the backup vehicles arrive? Again, that's not clear from the record at what precise point in the questioning process. Were they there when the officer asked McCall to step out of the car? I don't believe that's clear. Mr. Smock might have a better recollection of that. I don't recall that being clarified in the record. But, Judge, you do raise a good point that I was going to get to. The place where this stop took place, this was not a contrived situation. First of all, it wasn't a vehicle stop or a traffic violation stop for a broken taillight. There was good evidence of at least two possible crimes in progress. It was not contrived in the sense that where the stop finally took place was not the officer's doing. It was in a very dangerous situation for the police officer, both from the standpoint of being very close to the lanes of traffic, which is why he took the unusual step of approaching the vehicle on the passenger side. There were lots of overhanging bushes and trees near that area. It was near a bike trail. And there was very poor lighting. And this all contributes to the officer's justified fear that he can't control this situation adequately when there are four different people to keep your eye on and the knowledge that crime is afoot. But as Judge Nelson indicated, McCall was the one that made the furtive gesture, right? Yes, he described the passenger of the car being the one that reached down. But he left him alone. Well, I'm not sure it's accurate to say he left him alone. He could clearly, from his position from behind the vehicle, keep an eye on what's going on. But the officer takes a calculated risk in every car stop, and he has to make those judgments. I don't know what else he could have done. I mean, that's an indication that at that particular moment in time, he was probably alone. Otherwise, another officer might have been keeping an eye on Mr. McCall. Then one wonders why he didn't ask Mr. McCall to step out. Well, I think in my experience, officers feel that they are safer having only one person out of the car at a time. At least that person ---- The furtive gesture was by Mr. McCall. That's right. Not by Mr. Torres. That's right. But I think that the officer's normal instinct is to interview the driver first, the person who is ---- Do they get the keys from the driver before they do anything else? Or does the driver still sit in the driver's seat with the keys and the ignition? I don't think that's part of the record, but I think that's standard police procedure. What is? Well, to make sure that the vehicle can't go off while he's ---- I was thinking if I were a cop, I'd really prefer that the car didn't run over my foot. Right. But I didn't see anything about asking for the keys, and I don't know what the routine procedure is. Right. I don't think that was developed. I have about six seconds left. I've got a lot more I want to say, but I think if I can just make this last point. I think that the Supreme Court, if it said anything about these types of situations, is that the officer has to be given some latitude here to conduct the car stop as he sees fit, and that's because there is such a shocking amount of violence that occurs in these car stops. And there was certainly ---- this is not a contrived situation. Here the officer clearly had reasons to fear for his safety, and I don't think it's appropriate sitting back months later saying that, you know, maybe he could have taken the risk. Certainly Judge Burrell didn't think that was justified. Thank you, counsel. Counsel. I don't think that anyone here disputes the idea that this officer had a right to inquire further. Let me just ask a previous question. Is there any record to show when the other two police officers arrived? Yes. If you look at page 53 of the excerpts of record at line 21, the question is raised by defense counsel, what's your best recollection as to where they were at the very time you handcuffed and patted down Mr. McCall? His testimony was they were there and they were available. So at the time that he's interacting with Mr. McCall, these two additional officers are there. What could they do about it? I mean, suppose McCall had pulled out a screwdriver and put it through the policeman's vest into his heart. What are the other cops going to do except maybe clean up the blood? Well, if there's a genuine reasonable concern about danger, this officer had the ability to bring two additional officers over to speak to Mr. McCall. Nothing about his behavior suggested that he had a genuine concern about that. With respect to the burglaries, I think that really is a red herring. I think, as I said, the only information this officer had suggesting an involvement in burglaries was something from a student who said that the car was moving slowly through the parking lot. As he approached Mr. McCall, he knew a great deal more that suggested that, in fact, even that minimal amount of suspicion was not warranted. He knew that that vehicle was leaving the parking lot. He had spoken to Mr. Torres at the time that he approached Mr. McCall, and Mr. Torres provided him with a fairly reasonable explanation as to why they'd be in that parking lot, which was that they were picking up the young woman who was in the car who was a resident of the dormitory that was served by that parking lot. So he had been given a reasonable explanation as to why they were there. I don't think there's any basis to be concerned about a screwdriver or anything associated with burglaries at that point. Thank you, Counsel. The United States v. McCall is submitted. We'll hear Ferris v. Mukasey.
judges: Nelson, Kleinfeld, Hawkins